UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARDS-WILCOX, INC.

    Plaintiff,

    v.

MINSOR POWERTRAIN SYSTEMS, LLC,

    Defendant.

No. 02 C 8494
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richards-Wilcox, Inc. ("Richards-Wilcox") designs and installs overhead conveyor systems. Defendant Minsor Powertrain Systems ("Minsor") is engaged in the business of machining and painting engine blocks for the automotive industry. Richards-Wilcox's suit for breach of contract arises out of the failed installation of a conveyor system in Minsor's Saginaw plant.

In February 2001, Richards-Wilcox became aware that Minsor was interested in purchasing a conveyor system for its plant in Saginaw, Michigan. On May 9, 2001, Richards-Wilcox submitted a proposal for the creation and installation of an expanded overhead conveyor system. Minsor accepted Richards-Wilcox's proposal with purchase order # 7285, which was executed by Minsor's plant manager, Charles Wise. The original contract provided for the installation of a turnkey conveyor system, installation of new trolleys and swivel on the existing conveyor chain, and completion of work to take place during Minsor's customer shutdown period between July 2 and July 16.

On June 20, 2001, Richards-Wilcox prepared and sent a drawing of the proposed conveyor system to Minsor. As is typical, Minsor requested some changes to the proposed system, including the addition of 100 feet of new track and a change in the conveyor's direction. To allow

for these changes, Wise executed two change orders: the first on July 2nd, 2001 and the second on July 16th, 2001. The July 2nd change order stated that "the final tie-in will require a four-day weekend, the date to be determined," the "contract time" would be "extended by $\underline{X}$ days," and the "contract change amount" was $27, 471. The July 2nd change order was accepted by Richard-Wilcox's representative, Michael Nash, the same day. The July 16th change order stated that the final tie-in would require 8 consecutive dates of installation: the first 4 days to be completed during production and the last 4 days to be completed during a shutdown of the plant. The July 16th change order also added an additional $10,099 to the contract price. It was accepted by Nash on August 7, 2001.

After the execution of the change orders, Richards-Wilcox continued installing the conveyor system at Minsor's plant. In August 2001, Richards-Wilcox's subcontractor finished all of the installation work that could be completed without shutting down Minsor's preexisting conveyor system. Thereafter, the parties had difficulty scheduling a shutdown time. On October 16 and 17, 2001, the parties met to discuss a mutually agreeable shutdown date. At that time, Minsor agreed to shut the existing conveyor lines down on two upcoming weekends. Despite this agreement, Minsor did not shutdown its conveyor lines and eventually elected to abandon the project.

Richards-Wilcox now seeks summary judgment on its breach of contract claim. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). In determining whether any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its

favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States,* 180 F.3d 859, 861 (7th Cir. 1999).

Richards-Wilcox argues that Minsor breached its agreement when it refused to allow Richards-Wilcox to finish the conveyor system installation. Minsor does not dispute that it abandoned the project but argues instead that Richards-Wilcox had already breached their agreement by failing to (1) complete the installation within the designated time, (2) design a system that met the parties' contractual requirements, and (3) install a system that was structurally sound.

As a preliminary matter, Minsor argues that Michigan and not Illinois law should apply to this case. As a general rule, Illinois courts construe contracts according to the law of the state in which the contracts were entered. *Wildey v. Springs,* 840 F. Supp. 1259, 1263 (N.D. Ill. 1994) (*citing Wm. J. Lemp Brewing Co. v. Ems Brewing Co.,* 164 F.2d 290, 293 (7th Cir. 1947)) *rev'd on other grounds..* That is, unless the contract is performed in another state; in which case, the laws of that state will govern in the event that the laws differ. *Id.* Minsor claims that Michigan law should apply since the contract was to be performed in Michigan. While Minsor is correct in this assertion, it fails to point out any conflict between the Illinois and Michigan laws as they apply to this case. And where there is no demonstrated conflict, Illinois choice of law rules dictate that I must proceed under the law of the forum state. *Sterling Fin. Mgmt., L.P. v. UBS PaineWebber*, 782 N.E.2d 895 (Ill. App. Ct., 2002).

In the instant case, it is clear that Minsor breached its agreement with Richards-Wilcox by failing to allow Richards-Wilcox to finish the conveyor system installation. The question which

3

remains, however, is whether Richards-Wilcox also breached the agreement. "It is commonplace contract law that a party cannot have the benefits of a contract unless he has also performed the obligations." *McBride v. Pennant Supply Corp.*, 623 N.E.2d 1047, 1052 (Ill. App. Ct. 1993) (*quoting Kobus v. Jefferson Ice Co.*, 276 N.E.2d 725, 727 (Ill. App. Ct. 1971)). Thus, if Richards-Wilcox breached the agreement before Minsor abandoned the project, Richards-Wilcox may not be entitled to compensation.

First and foremost, Minsor claims that Richards-Wilcox breached their agreement by failing to install the conveyor system during the originally designated time. The contract explicitly states that "time is of the essence, all work to be completed between our customer shutdown periods: July 2-16." The evidence clearly demonstrates that Richards-Wilcox could not and did not complete the work before July 16, 2001. Richards-Wilcox argues, however, that the terms related to timing of the project were validly modified by two change orders submitted by Minsor.

Under Illinois law, "a valid modification of a contract must satisfy all the criteria essential for a valid contract, including offer, acceptance, and consideration." *Schwinder v. Austin Bank,* 809 N.E.2d 180, 189 (Ill. App. Ct. 2004). When a contract is modified, the terms of the modification, not the original contract, control in an action for breach of contract. *Id.* "A modified contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract." *Id.* Here there is not much debate as to the validity of the modification. The change orders were authored by Wise, Minsor's representative, and accepted by Nash, Richards-Wilcox's representative, and each contained additional consideration in the form of payments to be made by

4

Minsor: the first in the amount of $27,471 and the second in the amount of $10,099. What is at issue is the meaning of the change orders.

The first change order, submitted on July 2, 2001, stated that the shutdown required to finalize the conveyor system installation would occur on a "date to be determined" and that the "contract time" would be "extended by $\underline{X}$ days." The second change order, submitted on July 16, 2001, stated that the "final tie-in will require 8 consecutive days of installation. The first 4 days can be completed during production. The last 4 days must be completed during shutdown." Taken together, these change orders show that Minsor was willing to and did extend the time of installation past the contract's original July 16th deadline. Each of the change orders clearly referenced work which was to be completed after the original July 16th deadline, with the July 2nd change order providing for an unspecified extension of time.

What's more, Minsor allowed Richards-Wilcox to continue its installation efforts long after the July 16th deadline had passed. Minsor allowed Richards-Wilcox to complete the first of the four remaining days of installation in August 2001 and continued to discuss with Richards-Wilcox possible shutdown dates well into October 2001. This demonstrates Minsor's intention to extend the time allowed for completion of the conveyor system through its change orders.

Minsor argues briefly that it was fraudulently induced into submitting the change orders at issue here. It claims that Richards-Wilcox intentionally submitted its proposed system drawings late so that Minsor would have to extend the time in order to incorporate necessary changes. According to Minsor, Richards-Wilcox was attempting to stall the project and cover-up the fact it could not make timely completion.

Given that the statements extending time were incorporated into the change orders by Minsor's representative, it is difficult to see how those extensions were induced by Richards-Wilcox's actions. There is nothing in the record to indicate that Wise pressed the timing issue with Richards-Wilcox. In fact, he did the opposite; instead of emphasizing the need to incorporate the changes during the prearranged time, he wrote an extension of time into the first change order and then continued to plan the installation after the deadline had passed. Accordingly, I find that the original contract was validly modified to extend the project deadline. Because the time was extended, Richards-Wilcox did not breach the contract's timing provisions.

Next, Minsor argues that Richards-Wilcox breached the parties' agreement by failing to provide a turnkey conveyor system and by failing to provide a system that was structurally sound. Minsor provides testimony that Richards-Wilcox refused to provide the controls and other parts needed to make a turnkey system. Minsor also provides expert testimony that the parts of the conveyors that were installed were structurally unsound. These, unlike the contract modification, are issues of fact, not law, which are not properly resolved during summary judgment.

For the reasons herein, Richards-Wilcox's Motion for Summary Judgment is GRANTED in part and DENIED in part.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: May 5, 2005